**PROPOSED SECOND AMENDED COMPLAINT**

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA

LEANNE SEELEY and SCOTT SEELEY, husband and wife,

Plaintiffs,

v.

BRS FIELD OPS, LLC, a Utah limited liability company, d/b/a BLUE RAVEN SOLAR; BLUE RAVEN SOLAR, LLC, a Utah limited liability company; COMPLETE SOLAR, INC., a California corporation; SUNSTRONG MANAGEMENT LLC, a limited liability company; and JOHN DOES 1–10,

Defendants.

Case No. 3:25-cv-06032-BHS

SECOND AMENDED COMPLAINT (Jury Trial Demanded)

Plaintiffs Leanne Seeley and Scott Seeley ("Plaintiffs"), proceeding pro se, allege:

1. This case arises from Defendants' deceptive sale, financing, servicing, and post-sale handling of Plaintiffs' residential solar transaction and related financing.

2. Plaintiffs were induced into the transaction by specific promises that: (a) Plaintiffs would have "no out-of-pocket" payments for the first 18 months through a monthly payment/reimbursement program ("BluePower Plus" / "BLUEPOWER + FAST TRACK"); (b) Plaintiffs' combined monthly solar and utility outlay would be roughly the same as or lower than before solar; and (c) the system would deliver meaningful savings and be supported by warranties and service.

3. Instead, Plaintiffs experienced repeated failures of the promised monthly payment/reimbursement program (including late, missing, and dishonored checks), escalating financial harm and threats of negative credit consequences. Defendants also mishandled Plaintiffs' customer data and account information by disclosing private information to a prospective homebuyer without authorization, contributing to the collapse of Plaintiffs' home sale and substantial damages.

4. After a bankruptcy asset sale Defendants now cite to avoid responsibility, the same customer-facing operation continued under "Complete Solar" branding and

personnel, and Defendants continued the reimbursement failures and post-sale misconduct.

5. Plaintiffs allege they received no direct notice of the bankruptcy proceedings or sale that Defendants invoke, depriving them of any meaningful opportunity to object or protect their rights. Plaintiffs also allege Defendants' post-sale acts and omissions create independent liability not extinguished by any sale order.

II. JURISDICTION, VENUE, AND PERSONAL JURISDICTION

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiffs are citizens of Washington, Defendants are citizens of other states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and injuries occurred in this District, including at Plaintiffs' home in Graham, Washington.

8. This Court has personal jurisdiction over Defendants because they transacted business in Washington, sold and serviced a consumer solar system installed in Washington, directed collection/credit communications into Washington, and committed tortious acts causing injury in Washington.

9. To the extent any form contract contains out-of-state choice-of-law or forum-selection language, Plaintiffs allege such provisions are unenforceable as applied to Washington statutory consumer protections (including RCW 19.86 and RCW 19.95), and/or unreasonable and contrary to Washington public policy where the transaction, installation, servicing, and injuries occurred in Washington.

III. PARTIES

10. Plaintiffs are a married couple residing in Graham, Washington. The solar system at issue was installed at Plaintiffs' residence located at 9215 198th Street Ct E, Graham, WA 98338 (the "Property").

11. Defendants BRS Field Ops, LLC and Blue Raven Solar, LLC are referred to collectively as the "Blue Raven Defendants."

12. Defendant BRS Field Ops, LLC ("BRS Field Ops") is identified as the contracting "Company" on Plaintiffs' Home Improvement Contract ("HIC") and does business as Blue Raven Solar.

13. Defendant Blue Raven Solar, LLC ("Blue Raven Solar, LLC") marketed and sold the transaction.

14. Defendant Complete Solar, Inc. ("Complete Solar") is, upon information and belief, the entity that acquired and/or operated the Blue Raven solar business post-sale, and is liable for its own post-acquisition acts and omissions and under successor/assignee theories and Washington consumer solar statutes, as alleged below.

15. Defendant SunStrong Management LLC ("SunStrong") is, upon information and belief, the owner, assignee, and/or servicer of the financing associated with Plaintiffs' transaction and demanded payments despite disputes and Defendants' failures described below.

16. Defendants John Does 1–10 are persons or entities whose identities are currently unknown who participated in, directed, ratified, or benefited from the conduct alleged. Plaintiffs will amend to identify them when discovered.

IV. FACTUAL ALLEGATIONS

A. Contract Formation and the Sales Pitch (Fraud Particulars)

17. On or about January 18, 2024, the Blue Raven Defendants' sales representatives solicited Plaintiffs in Washington and induced Plaintiffs to enter into a written HIC and associated financing/program documents (collectively, the "Agreements") for a residential solar system.

18. During the sales process, the Blue Raven Defendants' representatives represented to Plaintiffs, in substance and effect, including but not limited to: a. Plaintiffs would receive monthly payments/reimbursement covering the first eighteen (18) months so Plaintiffs would have no out-of-pocket payments during that period; b. Plaintiffs' combined solar-loan payment and utility bill would be roughly the same as, or lower than, what Plaintiffs paid before solar; and c. the system would provide meaningful long-term savings over Plaintiffs' prior utility costs.

19. These representations were made during an in-person sales presentation at Plaintiffs' home by one or more sales representatives, using proposal documents and an iPad or printed estimate showing payment math.

20. These representations were material. Plaintiffs relied on them, and Plaintiffs would not have agreed to a $50,000+ solar system and long-term loan absent those promises.

21. Any generalized "savings not guaranteed" language in proposal materials did not disclose, cure, or negate the specific "no out-of-pocket for 18 months" payment promise and the concrete affordability representations the Blue Raven Defendants used to induce Plaintiffs' assent, nor does it authorize late, missing, or dishonored payments.

B. The 18-Month Monthly-Payment Duty Was Contractual (Not Just Oral)

22. The Agreements included a specific monthly payment/reimbursement promise marketed as "BluePower Plus" and/or "BLUEPOWER + FAST TRACK," describing that the Blue Raven Defendants would send monthly payments for the first 18 months and marketing the benefit as "No payments for the first 18 months," including transferability to a new homeowner.

23. The HIC confirms that if the customer qualifies for and participates in the BLUEPOWER + FAST TRACK program, the Company agrees to make payments to the customer in accordance with the applicable terms (including proposal/program terms), conditioned on receipt of loan proceeds from the participating lender.

24. Plaintiffs also received program documents describing, in substance, that by going solar with Blue Power Plus, Blue Raven Solar will send a monthly payment for the first 18 months, and the program was presented as a unique 18-month offer exclusively from Blue Raven Solar.

C. Payment/Reimbursement Failures, Bank Harm, and Collection/Credit Pressure

25. After installation, Defendants failed to deliver the promised monthly payments reliably and timely. Checks were late, missing, and/or dishonored, causing Plaintiffs overdrafts, bank fees, and financial hardship—directly contrary to the "no out-of-pocket" promise.

26. Plaintiffs repeatedly complained and sought correction. Defendants provided shifting explanations and failed to cure the core problem.

27. Plaintiffs also faced pressure to keep paying despite disputes, including warnings about late fees and credit consequences.

28. The HIC includes remedies/collection language permitting collection measures, including reporting alleged amounts owing to a credit reporting agency. Defendants invoked and/or leveraged these collection consequences in the context of Defendants' own ongoing failures.

D. Warranty / Transferability Representations and System Value to a New Buyer

29. BluePower Plus materials market transferability to a new homeowner.

30. The HIC contains language concerning limitations if a customer moves a system to a new property, while also containing a transfer provision stating that, in the event of conveyance of the underlying real property, the Company agrees to accept and honor any valid warranty/guarantee claim with respect to the system.

31. Defendants' later communications to the prospective buyer (alleged below) were inconsistent with the transferability representations and with Defendants' contractual commitments, and were delivered in a manner that foreseeably harmed Plaintiffs' home sale.

E. Bankruptcy Sale, Lack of Notice, and Post-Acquisition Continuity

32. Plaintiffs allege they did not receive direct mailed notice of any bankruptcy filing or proposed sale that Defendants now invoke to claim "free and clear" protection, and Plaintiffs had no meaningful opportunity to appear, object, or protect their interests.

33. Plaintiffs were known or knowable consumer counterparties because Defendants had Plaintiffs' contract, account, contact information, and ongoing payment obligations and disputes.

34. Due process requires notice reasonably calculated to reach known or knowable claimants before their rights are cut off. Plaintiffs allege that the absence of direct notice prevents Defendants from using a bankruptcy sale order to extinguish Plaintiffs' rights without notice, including as recognized in In re Motors Liquidation Co., 829 F.3d 135 (2d Cir. 2016).

35. In late December 2024, Plaintiffs received an email from Blue Raven support lead Elise G. on December 27, 2024, explaining, in substance, that SunPower went bankrupt; Blue Raven's assets were auctioned; Blue Raven "was then bought" by Complete Solar; Blue Raven had to switch banks to align with the acquiring company's banking process; and employees were manually stuffing "thousands of checks" because of backlog.

36. These statements and the ongoing handling of Plaintiffs' account show continuity of operations and that Complete Solar controlled or directed key customer-facing functions post-sale, including the reimbursement/payment program and customer service. The Elise email and later communications used Complete Solar branding/email domain, further evidencing continuity.

37. Defendants continued the same misconduct post-acquisition, including continued reimbursement/payment failures, continued pressure regarding payments, and the mishandling of Plaintiffs' customer information in connection with the prospective buyer call described below.

38. Complete Solar is liable for: (a) its own post-acquisition acts and omissions; and (b) successor/assignee liability under Washington law exceptions (including assumption, de facto merger, mere continuation, and/or fraudulent transaction), and Washington consumer solar statutes that impose assignee/purchaser responsibility for consumer solar contracts. Complete Solaria's Form 10-Q filed December 19, 2025, describes assumptions

of liabilities including deferred revenue ($7,361,000), accrued expenses ($13,955,000), and other long-term liabilities ($8,980,000) related to customer contracts and operations, which evidences de facto merger or mere continuation notwithstanding the Section 363 sale.

F. Unauthorized Disclosure of Customer Data to Prospective Buyer; Collapse of Home Sale

39. In early 2025, Plaintiffs entered into a purchase-and-sale agreement to sell the Property.

40. On or about April 11, 2025, prospective buyer Craig Reynolds called Defendants' customer-service line about Plaintiffs' solar system.

41. Neither Plaintiff gave Defendants permission to discuss Plaintiffs' account, billing history, or system performance with Mr. Reynolds or any third party.

42. Defendants' agent nevertheless disclosed Plaintiffs' private account/system and billing-related information to the buyer without verified authorization, and provided unduly negative, incomplete, and unbalanced information—without adequate context or consumer-protective guidance.

43. The agent's disclosures and framing included, among other things: discussion of a small solar credit on bills and otherwise "huge" bills; reference to a "Gateway not reporting" issue; and selective presentation of contract/warranty language in a way that portrayed the system as a liability.

44. The agent did not provide balanced disclosure of the Agreements' transferability and conveyance-related provisions, and did not correct misconceptions in a reasonable, consumer-protective manner. Instead, the interaction predictably depressed perceived value and increased buyer concerns.

45. The HIC includes a "Customer Data" provision in Paragraph 30 acknowledging a privacy policy and Defendants' handling of customer information. Plaintiffs allege Defendants breached contractual privacy/data commitments and failed to implement reasonable authorization controls, training, and safeguards to prevent unauthorized disclosure.

46. Defendants later confirmed the substance and impact of the call in follow-up communications, including an email from Complete Solar Customer Success representative Chris on April 16, 2025, and an email from Dan Lopez on April 22, 2025, using a @completesolar.com email identity and "Complete Solar" branding.

47. Shortly after the call, the buyers withdrew and Plaintiffs' home sale collapsed. Plaintiffs suffered at least $150,000 in lost proceeds and related damages, plus other consequential harms.

G. Pattern / Public Interest Allegations (Pleading-Safe Version)

48. The conduct at issue is not an isolated incident. Defendants' own admissions about a backlog involving "thousands of checks" reflect a large-scale customer-facing program failure with capacity to deceive or injure substantial numbers of consumers.

49. Upon information and belief, public-facing consumer complaint records and discussions (including Better Business Bureau complaint histories and online consumer reports) reflect recurring themes consistent with Plaintiffs' experience, including promised reimbursement programs not being timely funded, shifting explanations, and customer-service failures. Plaintiffs will seek discovery and, as appropriate, present admissible evidence supporting these public-interest allegations.

50. These allegations support the public-interest prong of Plaintiffs' Washington Consumer Protection Act claim because the challenged conduct arises from standardized marketing, contracting, financing, and servicing practices directed at consumers and has the capacity to affect substantial numbers of similarly situated consumers.

H. Damages

51. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered: a. Out-of-pocket loan payments and utility costs greater than promised; b. Bank overdrafts and fees caused by late/missing/dishonored checks; c. Credit-related harms and threats; d. Loss of the home sale and damages of at least $150,000; and e. Other consequential, foreseeable damages to be proven at trial.

V. CLAIMS FOR RELIEF

COUNT 1 — Fraudulent Misrepresentation (Against Blue Raven Defendants; and against Complete Solar and SunStrong to the extent of post-acquisition misconduct and successor/assignee enforcement)

52. Plaintiffs reallege paragraphs 1–51.

53. The Blue Raven Defendants, through their sales agents, misrepresented material facts including the 18-month "no out-of-pocket" payment/reimbursement arrangement, expected savings, and affordability/outcome of the transaction.

54. The Blue Raven Defendants intended Plaintiffs to rely. Plaintiffs reasonably relied and suffered damages.

55. Complete Solar is liable for its own post-acquisition misconduct and because it continued customer-facing handling of the reimbursement program and account servicing that caused Plaintiffs harm post-sale, and/or is liable under successor/assignee theories and Washington consumer solar protections.

56. SunStrong is liable to the extent it is the assignee/owner/servicer enforcing the transaction and demanding payment while benefiting from and participating in an unfair or deceptive consumer solar scheme and related statutory violations, including to the extent Washington law provides assignee liability and defenses.

COUNT 2 — Negligent Misrepresentation (Alternative) (Against all Defendants as applicable)

57. Plaintiffs reallege paragraphs 1–56.

58. Defendants supplied false information in the course of their business and failed to exercise reasonable care in obtaining or communicating information about costs, savings, reimbursement obligations, transferability, and post-sale account handling.

59. Plaintiffs justifiably relied and suffered damages.

60. The duties alleged arise independently of the contract, including under public policy and consumer protection laws.

COUNT 3 — Breach of Contract (Against all Defendants as applicable)

61. Plaintiffs reallege paragraphs 1–60.

62. Plaintiffs entered into the Agreements and performed or were excused from further performance due to Defendants' breaches.

63. Defendants breached by failing to make the promised monthly payments/reimbursements for the first 18 months as incorporated into the transaction and referenced in the HIC and BluePower/Fast Track materials.

64. Defendants breached by disclosing Plaintiffs' customer/account information without verified authorization and contrary to contractual privacy/data commitments incorporated into the HIC.

65. Defendants breached by mishandling customer-service communications to a prospective homebuyer in a way that misrepresented and/or omitted material context regarding transferability, performance, and warranty/guaranty rights, foreseeably harming Plaintiffs' ability to sell the Property.

66. Plaintiffs suffered damages.

COUNT 4 — Breach of the Covenant of Good Faith and Fair Dealing (Against all Defendants as applicable)

67. Plaintiffs reallege paragraphs 1–66.

68. Defendants deprived Plaintiffs of the benefit of the bargain by frustrating the reimbursement/payment program, mishandling account servicing, leveraging threats of credit reporting in the face of Defendants' own failures, and mishandling third-party inquiries in a way that foreseeably harmed Plaintiffs.

COUNT 5 — Washington Consumer Protection Act (RCW 19.86) (Against all Defendants)

69. Plaintiffs reallege paragraphs 1–68.

70. Defendants engaged in unfair or deceptive acts or practices in trade or commerce, including deceptive sales representations; failure to timely fund/deliver the promised reimbursement program; shifting explanations and continued pressure to pay; failure to implement reasonable authorization/privacy controls; and the mishandled buyer call.

71. These acts affect the public interest because they have the capacity to deceive substantial portions of the public and relate to consumer solar marketing/servicing, including a reimbursement program administered across numerous customers.

72. Plaintiffs suffered injury to business or property, and Defendants' acts caused the injury.

73. Violations of RCW 19.95 constitute per se unfair or deceptive acts under RCW 19.86.

74. Plaintiffs seek damages, treble damages and statutory remedies under RCW 19.86, costs/fees as allowed, and injunctive relief.

COUNT 6 — Washington Solar Energy Consumer Protections Act (RCW 19.95 et seq.) (Against all Defendants as applicable)

75. Plaintiffs reallege paragraphs 1–74.

76. Defendants violated Washington's solar consumer protection requirements through deceptive sales practices and failures in consumer solar servicing and program administration.

77. To the extent the financing/contract was assigned, Plaintiffs allege the assignee/purchaser is subject to consumer claims and defenses under RCW 19.95,

including RCW 19.95.020(10), and is not insulated from liability for post-acquisition acts and independent statutory duties.

COUNT 7 — Invasion of Privacy / Breach of Confidentiality; and/or Negligence (Unauthorized Disclosure) (Against Complete Solar and/or the entity operating the call center; and Does as applicable)

78. Plaintiffs reallege paragraphs 1–77.

79. Defendants disclosed Plaintiffs' private financial/account and system information to a third party without authorization, in circumstances in which a reasonable consumer would expect confidentiality, and without reasonable verification controls.

80. Defendants' disclosure was highly offensive to a reasonable person and not of legitimate concern to the public; and/or Defendants breached a duty of reasonable care to safeguard customer data and prevent unauthorized disclosure; and/or breached a confidential relationship by disclosing sensitive account information entrusted to them.

81. Plaintiffs suffered damages, including loss of the home sale and consequential harms.

82. The duties alleged arise independently of the contract, including under public policy and consumer protection laws.

COUNT 8 — Tortious Interference with Business Expectancy (Home Sale) (Against Complete Solar and Does as applicable)

83. Plaintiffs reallege paragraphs 1–82.

84. Plaintiffs had a valid business expectancy in the pending home sale.

85. Defendants knew or should have known their communications to a prospective homebuyer about Plaintiffs' solar account and system would influence the buyer's decision. The agent knew the purpose of the call was a home-sale decision and nevertheless chose to disclose and frame the information in a way likely to derail the sale.

86. Defendants intentionally and improperly interfered by disclosing private account information without proper authorization and by providing incomplete, unbalanced, and unduly negative representations and omissions that foreseeably caused the buyers to withdraw.

87. Plaintiffs suffered damages including the collapse of the sale and consequential losses.

COUNT 9 — Declaratory and Injunctive Relief (Against all Defendants)

88. Plaintiffs reallege paragraphs 1–87.

89. An actual controversy exists concerning enforceability of the Agreements, Defendants' continued collection posture and credit-reporting threats, and the parties' rights and obligations.

90. Plaintiffs seek declarations and injunctive relief including: (a) prohibiting negative credit reporting tied to disputed amounts; (b) requiring accurate consumer communications and reasonable authorization safeguards; and (c) other equitable relief as justice requires.

VI. PRAYER FOR RELIEF

91. WHEREFORE, Plaintiffs request judgment against Defendants as follows:

92. A. Compensatory damages in an amount to be proven at trial (including at least $150,000 related to the home sale collapse, plus out-of-pocket losses, fees, and consequential damages);

93. B. Treble damages and statutory remedies under RCW 19.86;

94. C. Declaratory and injunctive relief as pleaded;

95. D. Costs and any fees allowed by statute;

96. E. Pre- and post-judgment interest as allowed; and

97. F. Such other and further relief as the Court deems just and proper.

VII. JURY DEMAND

98. Plaintiffs demand a trial by jury on all issues so triable.

DATED: January 06, 2026

/s/ Leanne Seeley Leanne Seeley, Pro Se

/s/ Scott Seeley Scott Seeley, Pro Se